UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| B. SUSAN BRANTLEY-SMITH, | ) |
| Plaintiff, | ) |
| | ) 06 C 6548 |
| v. | ) |
| | ) Judge George M. Marovich |
| VALEANT PHARMACEUTICALS, | ) |
| NORTH AMERICA, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff B. Susan Brantley-Smith ("Brantley-Smith") filed a complaint in which she alleged that Valeant Pharmaceuticals, North America ("Valeant") discharged her on the basis of her age in violation of the Age Discrimination in Employment Act ("ADEA"). Before the Court is defendant's motion for summary judgment. For the reasons set forth below, the Court grants defendant's motion for summary judgment.

**I. Background**

The following facts are undisputed unless otherwise noted.[1]

---

[1] Before the Court discusses the facts, it reiterates the importance of complying with Local Rule 56.1. Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. In addition, where one party supports a fact with admissible evidence and the other party denies the fact without citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This, however, does not absolve a party of its initial burden of putting forth admissible evidence to support its facts. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.

Defendant Valeant is a pharmaceuticals company that manufactures and markets, among other things, migranal products for the treatment of migraines and diastat products for the treatment of seizures. In the spring of 2005, Valeant purchased Xcel Pharmaceuticals ("Xcel"), a company that had been in business since 2001. When Valeant purchased Xcel, plaintiff Brantley-Smith became an employee of Valeant.

Xcel had hired Brantley-Smith as an Area Business Manager on May 15, 2001. As Area Business Manager, Brantley-Smith was responsible for a group of sales representatives in Illinois and other midwestern states. Brantley-Smith was responsible for developing the sales representatives and for meeting sales objectives. Brantley-Smith reported to Craig Chambliss ("Chambliss") from October 2001 until some point in 2003, when David Mayfield ("Mayfield") became Brantley-Smith's supervisor.

Chambliss reviewed Brantley-Smith's 2002 annual performance in April 2003. In the "Areas for Improvement" section of Brantley-Smith's annual appraisal, Chambliss wrote that:

> Susan's top strategy for 2002 was to 'Effectively coach and retain consultants'. Unfortunately, she has seen 25% turnover in her area since then, with one additional consultant on a strict Skills Advancement Plan. This turnover and lack of performance kept Susan from a first place finish and the President's Club in 2002. Opportunities for improvement include:
>
> 1. Effectively addressing issues prior to them reaching 'crisis' mode.
> 2. Holding consultants accountable for their performance and sales/administration standards.
> 3. Effectively managing representatives who are not highly self-motivated.
> 4. Understanding employee motivations and continually assessing job satisfaction.
> 5. Effective utilization of designated area budget.

This was not the first time Chambliss had expressed to Brantley-Smith concern that her employee turnover was too high. Brantley-Smith testified in her deposition that she agreed that

employee turnover was a legitimate concern.  Two of the employees who left that year, however, left at the request of the company's owner.

By August 2003, Mayfield had become Brantley-Smith's supervisor, and he put her on a Skill Advancement Plan.  Brantley-Smith understood that the reason she was put on a Skill Advancement Plan was because she was not meeting some of her manager's expectations.  In February 2004, Mayfield gave Brantley-Smith a written progress report and met with her to discuss her progress.  Mayfield told her the turnover was a concern because it was still at an unacceptable level.  At the time, Brantley-Smith was ranked tenth out of ten area managers with respect to sales goals.

In April 2004, Mayfield met with Brantley-Smith to discuss her 2003 annual performance appraisal.  At the end of 2003, Brantley-Smith's overall sales were tenth out of ten areas.  Her sales ranking for Migranal was seventh out of ten, and her sales ranking for Diastat was tenth out of ten.  In addition, Brantley-Smith had employee turnover in several of her assigned cities, including Milwaukee, Fargo, Peoria and Grand Rapids.  The annual appraisal listed the following areas for improvement: problem-solving, direction and follow-up, personnel motivation, personnel retention and strategic thinking.  Brantley-Smith testified that she understood the appraisal was not positive, but she also thought some measurements were "pretty darn good."  For example, Brantley-Smith exceeded expectations with respect to "Peer to Peer" programs.  She believed her team was better than some other teams in the country.  She also believed that Mayfield set her Migranal goal higher than anyone else's.

Not long thereafter, still in April 2004, Mayfield put Brantley-Smith on a Performance Improvement Plan.  Among other things, the Performance Improvement Plan stated:

> Susan Brantley-Smith has demonstrated deficiencies in the areas of direction and follow-up, problem solving, employee retention, and timeliness. These deficiencies have resulted in motivational and performance issues, and high levels of turnover in the North area as evidenced by the resignations from four of her consultants (or 50% of her total area) in a twelve month period from 2003 to early 2004. Initial verbal coaching of Susan and implementation of a written Skills Advancement Plan have not produced the desired result required for the successful execution of her duties as an Area Business Manager with Xcel Pharmaceuticals.

In addition, the Performance Improvement Plan required Brantley-Smith to spend four days of each week in the field with the consultants she supervised. The Plan also required Brantley-Smith to have turnover that was no higher than the average turnover in the other nine areas. With respect to this plan, Brantley-Smith believed she was singled out for unreasonable goals.

In October 2005, following the purchase of Xcel by Valeant, Mayfield again put Brantley-Smith on a Performance Improvement Plan. The Performance Improvement Plan was to last for sixty days. This Performance Improvement Plan, like the last one, emphasized direction and follow-up, retention of employees, problem-solving and product performance. Among other things, the plan stated that Brantley-Smith's turnover should be not more than the average for the other areas and that there should be no additional turnover for the remainder of 2005. The plan noted that her sales were ninth out of eleven areas for both Migranal and Diastat. The plan called for her to bring the sales up to the top half of the eleven areas. The plan also required Brantley-Smith to keep notes of all of her field visits and to fax in reports from the field. Brantley-Smith understood that if she did not meet the terms of the plan, her employment could be terminated.

Valeant terminated Brantley-Smith's employment on December 6, 2005. Mayfield informed Brantley-Smith that she had failed to meet the terms of her Performance Improvement Plan. Specifically, Mayfield told plaintiff that she was ranked at the bottom of area managers in

terms of sales. Mayfield also informed her that she had failed to meet the terms of the plan because a sales specialist had left during the plan. In March 2006, Brantley-Smith received a "record high" bonus for the year 2005.

Valeant replaced Brantley-Smith with Scott Heitmann. Scott Heitmann was in his early 30's at the time.

Brantley-Smith timely filed with the EEOC a charge of discrimination, in which she alleged she was discriminated against on the basis of her age. Brantley-Smith was born on May 21, 1958. She was 43 years old when Xcel hired her, and she was 46 years old when Valeant purchased Xcel. Brantley-Smith was 47 years old on the day that Valeant terminated her employment.

Mayfield never made any comments to Brantley-Smith about her age. He made comments, however, that bothered plaintiff. For example, when an employee left the company, Mayfield said the employee did not need the money anyway. Mayfield criticized plaintiff for not being married. Specifically, Mayfield said in Brantley-Smith's presence that if a man is not going to marry a woman, the woman should get rid of the man as he is, accordingly, no good. Mayfield once made a comment to Brantley-Smith about fake nails, but it is not clear from the record whether Mayfield was suggesting that Brantley-Smith should get fake nails or should stop wearing them. Finally, Brantley-Smith believes that Mayfield resented her ability to travel abroad.

Another Valeant employee, Tom O'Neill ("O'Neill") once asked all the managers in the company to share their industry experience. Brantley-Smith had the most experience of anyone in the room. O'Neill never made any comments about Brantley-Smith's age.

## II. Summary Judgment Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

Brantley-Smith claims that she was discharged on the basis of her age in violation of the Age Discrimination in Employment Act ("ADEA"). The Age Discrimination in Employment Act makes it "unlawful for an employer–(1) to fail or refuse to hire or to discharge any individual . . . because of such individual's age." *See* 29 U.S.C. § 623(a)(1). A plaintiff may establish discrimination in violation of the ADEA either by putting forth direct evidence of discrimination or by following the indirect method under *McDonnell Douglas Corp. v. Green.*, 411 U.S. 792, 802 (1973).

A statement can be "direct evidence of discriminatory intent where the statement was made around the time of *and* in reference to the adverse employment action." *Olson v. Northern*

*FS, Inc.*, 387 F.3d 632, 635 (7th Cir. 2004) (emphasis added) (citing *Hunt v. City of Markham*, 219 F.3d 649, 652 (7th Cir. 2000)). Here, Brantley-Smith points to comments by O'Neill as direct evidence of discrimination. O'Neill was in a meeting with Brantley-Smith and other managers one time when he asked everyone in the room to share their industry experience. Brantley-Smith had the most industry experience of anyone in the room. Despite Brantley-Smith's attempt to paint O'Neill's question as direct evidence of discrimination, the Court does not find this to be evidence of age discrimination. Nothing about the question demonstrates an animus toward age, and O'Neill had nothing to do with the decision to terminate Brantley-Smith's employment.

Brantley-Smith also points to comments made by Mayfield, who *was* involved with the decision to terminate her employment. Mayfield commented in plaintiff's presence that a woman should not stay with a man who would not marry her because that indicated he was no good. Mayfield also commented on plaintiff's finger nails. Plaintiff also felt that Mayfield resented her ability to travel abroad. On their faces, these comments are unrelated to age. Even if one made the huge leap to conclude they suggested an animus toward age, none of these comments was made in connection with the decision to terminate Brantley-Smith's employment. No reasonable jury could conclude that Brantley-Smith was a victim of age discrimination based on these comments.

Because Brantley-Smith provides no direct evidence of discrimination, she must follow the indirect method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The "burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). It requires a plaintiff to show that she was "rejected under circumstances which give rise to an inference of unlawful discrimination" and the "standard is not inflexible" because facts vary in different cases.

*Burdine*, 450 U.S. at 253 and n.6. To make out a *prima facie* case of discrimination in the termination context, a plaintiff must establish that (1) she is a member of a protected class; (2) she performed her job to her employer's expectations; (3) she was discharged; and (4) the employer either filled the position with a person not in the plaintiff's protected class or a similarly-situated individual outside her protected class was treated more favorably. *Jennings v. Illinois Dep't of Corrections*, 496 F.3d 764, 767 (7th Cir. 2007); *Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 845-846 (7th Cir. 2007).

The Court will assume without deciding that Brantley-Smith can make out a *prima facie* case of discrimination. She has shown that she was over the age of 40 at the time of her discharge (i.e., that she is in a protected class), that she was discharged and that she was replaced by someone outside of her protected class.

If a plaintiff makes out a *prima facie* case of discrimination, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision." *Rudin*, 420 F.3d at 724. "If the employer does articulate such a reason, then 'the plaintiff must show by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination.'" *Rudin*, 420 F.3d at 724. "To do this, the employee must establish that the explanation is a lie, which permits a jury to infer that the tale has been concocted to conceal an unlawful truth. It is not enough to demonstrate that the employer was mistaken, inconsiderate, short-fused, or otherwise benighted; none of those possibilities violates federal law. Poor personnel management receives its comeuppance in the market rather than the courts." *Yindee v. CCH Inc.*, 458 F.3d 599, 602 (7th Cir. 2006) (internal citations omitted).

Defendant Valeant has articulated a legitimate, non-discriminatory reason for Brantley-Smith's discharge. Valeant had informed Brantley-Smith in October 2005 that she had sixty days to meet the terms of a Performance Improvement Plan. That plan required, among other

things, Brantley-Smith to improve sales in her area from ninth of eleven areas to the top half of those areas. In addition, the plan called for turnover to occur in Brantley-Smith's area to be no higher than the average turnover in the other areas and for no additional turnover in her area for the remainder of the year. When Valeant terminated Brantley-Smith's employment in December 2005, it informed her the reason for the termination was that she did not meet the terms of the Performance Improvement Plan. Specifically, Brantley-Smith's area was ranked at the bottom of the eleven areas in terms of sales, and a sales specialist had left from her area.

Although Brantley-Smith dedicates some space in her brief to explaining the standard for pretext, she does not point out a single fact that suggests that Valeant's legitimate, non-discrimniatory reason for terminating her employment is a pretext for discrimination. To the contrary, the evidence shows that Valeant had been telling Brantley-Smith for years that she needed to improve her sales and her employee turnover. Brantley-Smith admitted in her deposition that those were legitimate concerns. When it scoured the record (which it need not do) for possible evidence of pretext, the only thing the Court found was evidence that Brantley-Smith received a "record high" bonus in 2005. But what is missing from the record is any evidence about whether Brantley-Smith's bonus was high because her sales were actually in the top half of areas (which was the standard) or merely higher than she had received in the past. As it stands, no reasonable jury could conclude that Valeant's legitimate, non-discriminatory reason for discharging Brantley-Smith was a pretext for discrimination.

Valeant is entitled to judgment as a matter of law on Brantley-Smith's ADEA claim, and the Court grants Valeant summary judgment.

**IV.    Conclusion**

For the reasons set forth above, the Court grants defendant Valeant Pharmaceuticals, North America's motion for summary judgment.

ENTER:

George M. Marovich
United States District Judge

DATED: May 14, 2008